UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNARD WASSERSTEIN, | |
| Plaintiff, | Case No. 17-cv-6567 |
| v. | Judge John Robert Blakey |
| UNIVERSITY OF CHICAGO, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bernard Wasserstein sued his former employer, the University of Chicago, for allegedly breaching its fiduciary duty by altering certain faculty benefits in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* [26]. Defendant moved for summary judgment. [27]. For the reasons explained below, this Court grants Defendant's motion.

**I.       Background**

**A.      Procedural Posture and Local Rule 56.1**

Defendant originally filed its motion as a motion to dismiss. [27]. In open court on April 5, 2018, however, this Court gave notice that it would convert Defendant's motion to one for summary judgment in light of the relevant matters beyond the pleadings presented by Defendant and central to the resolution of the issues before the Court. *See* Fed. R. Civ. P. 12(d); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). As an additional factor supporting the conversion of Defendant's motion, the parties did not seek (or require) further discovery, since

the issues presented turn on the interpretation of documents now properly before this Court. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (noting that district courts have discretion in converting motions and discussing the need for discovery as one factor that courts may consider in making that determination).

Having converted Defendant's motion, this Court granted the parties additional time to prepare responses, supplemental documents, and exhibits. *See id.*; [36]. This Court also exercised its discretion regarding the rules for summary judgment motions and granted Defendant's request to excuse it from presenting a statement of facts compliant with Local Rule 56.1(a), as stated in open court on April 5. *See, e.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008). In the interest of efficiency, this Court permitted Defendant to rely upon the exhibits it filed with its motion to dismiss, rather than filing a separate Local Rule 56.1 statement of facts.

Accordingly, this Court draws the facts in this discussion primarily from the parties' exhibits and Plaintiff's statement of material facts [38]. This Court also cites Plaintiff's amended complaint [26] where that document provides contextual information not available elsewhere in the record.

### B.  Plaintiff's Retirement

Defendant hired Plaintiff as a full-time tenured professor in July 2003. [38-1] at 1. Around 2011, Defendant offered Plaintiff the opportunity to take early retirement under its Faculty Retirement Incentive Plan (FRIP). *See id.*; [26] ¶¶ 8–9, 12, 51–52, 58. The FRIP offered various benefits to incentivize faculty to take early retirement. *See* [38-1] at 2. The only document that Defendant "provided" to

Plaintiff or that he "obtained" that discussed the FRIP was Defendant's list of Frequently Asked Questions (the 2011 FAQ). *Id*. at 1–2; [38] ¶ 1.

The 2011 FAQ that Plaintiff reviewed addresses a range of questions about the FRIP's terms, mainly grouped by subject matter. *See* [38] ¶ 2; [38-2]. On the first page, the 2011 FAQ notes that tenured faculty over age 60 could receive up to $3,000 for retirement counseling services as they weighed their retirement decision. [38-2] at 1. In 2011, Plaintiff was approximately 62 years old. *See* [38-1] ¶ 3. The section of the 2011 FAQ headed "Tuition Benefits" states:

> **Q: Will my children continue to receive Laboratory School and college tuition benefits if I retire [under the FRIP]?**
>
> Yes, if you retire at or after age 65 with ten or more years in a full-time faculty rank, you qualify for the tuition benefit.
>
> **Q: Will my children continue to receive Laboratory School and college tuition benefits if I die before my elected retirement date?**
>
> Yes, if you die at or after age 55 with ten or more years in a full-time faculty rank, your children remain eligible for these tuition benefits.
>
> Consult http://hrservices.uchicago.edu/benefits/tuition/ for information about the Educational Assistance Plan.

[38-2] at 2. Although this brief reference to the Educational Assistance Plan (EAP) does not expressly say so, the EAP is a separate benefits plan that Defendant offers faculty members, as discussed further below. *See* [29-1] (EAP); [26-4] (FRIP).

Immediately below the Tuition Benefits section, the "General Questions" section directs the reader to contact Associate Provost Ingrid Gould with questions about the FRIP, along with other university officials. [38-2] at 2. The rest of the FAQ is split into two sections, the first addressing the FRIP's early retirement

3

option and the second addressing the "half-time" option. *See id.* at 1, 5, 10. On the first page discussing the early retirement option, the 2011 FAQ includes the following question: "Q: What retirement incentives are offered under the Early Retirement Option?" *Id.* at 5. In answer, the FAQ lists two, bullet-pointed incentives: a bonus, and waived health insurance premiums. *Id.* Finally, on the last page of the 2011 FAQ, before the appendix detailing health insurance costs under the plan, a disclaimer states:

> This document is intended to provide general information regarding the Faculty Retirement Incentive Plan. In the event of a discrepancy between this document and the Plan document, the Plan document will take precedence. Contact the Benefits Office (benefits@uchicago.edu) for a copy of the Plan document.

*Id.* at 12. According to Plaintiff, he searched the university website and faculty handbook but did not find the plan document in either location. [38] ¶ 3. Plaintiff also met with Gould before accepting early retirement, and Gould told him that the FAQ had all the information he needed. *Id.* ¶¶ 4–5. Gould did not give Plaintiff a copy of the plan document, and Plaintiff left the meeting with the impression that the 2011 FAQ "set forth the terms" of the FRIP. *Id.* ¶¶ 5–6. Plaintiff does not claim that he ever contacted the Benefits Office to request a copy of the FRIP.

On February 10, 2011, Plaintiff signed an "early retirement agreement," electing to participate in the FRIP's early retirement option. *See* [38-4]. By its terms, that agreement became irrevocable after seven days, and Plaintiff's retirement would go into effect in January 2014. *Id.* The agreement stated that Defendant would give Plaintiff "the benefits provided under the Faculty Retirement Incentive Plan (the 'Plan') in accordance with its terms." *Id.* at 1. It included an

4

acknowledgement that Plaintiff had received "accurate and complete information" about the Plan benefits; that Plaintiff entered the agreement voluntarily, after having been advised to consult an attorney; and that Plaintiff agreed to "be bound by the terms of the Plan." *Id*.

Thus, Plaintiff's retirement agreement became irrevocable on February 17, 2011, subject to one exception: according to the FRIP, if Defendant amended the Plan "in a manner that materially affects its terms or benefits," Defendant had to notify plan participants who had not yet actually retired, and those employees could revoke their agreement if they did so within 15 days. *See id*.; [26-4] at 6–7.

Plaintiff does not offer any evidence or otherwise claim that Defendant ever amended the FRIP at any point relevant to his claims.

### C. The EAP

Separate from the FRIP, Defendant offers tuition benefits to some faculty members and their children through the EAP. *See* [29] at 4; [29-1] (EAP); [26-4] (FRIP). As a tenured professor, Plaintiff met the EAP eligibility requirements. *See* [29-1] at 5, 24.

The EAP's Faculty Children Scholarship Plan (FCSP) covers tuition for faculty children attending accredited colleges and universities. *Id*. at 15. The version of the EAP in effect in February 2011 provided that retired faculty remained eligible for that tuition benefit if the faculty member retired at or after age 65 with at least 10 years of "tenured service." *Id*. at 17.

Under the EAP, Defendant has "discretionary authority to grant or deny benefits" under that plan, and reserves the right "to terminate the plan or to amend or eliminate benefits" in its "sole discretion." *Id*. at 21.

In May 2012, Defendant amended the EAP and made those changes effective as of July 2011. *See* [29-2] at 2. One amendment revised the qualifications for retired faculty to take advantage of the tuition benefit: only faculty members who retired at or after age 65 and had 15 years of "consecutive service in an eligible position" remained eligible for the tuition benefit. *Id*. at 18.

When Defendant amended the EAP it also revised the FRIP FAQ (the 2012 FAQ) to reflect those changes, since the FRIP FAQ referenced EAP benefits. *See* [29-3] at 3. The question concerning the college tuition benefit now reflected that retirees required 15 or more years "in a full-time faculty rank"; on the same page, the 2012 FAQ still directed the reader to its benefits website "for information about the Educational Assistance Plan." *Id*.

### D. This Case

In late 2016, Plaintiff learned that Defendant had amended the FAQ to reflect that retired faculty needed 15 years of service to qualify for the tuition benefit. [38] ¶ 8. On December 1, 2016, Plaintiff emailed Gould asking whether that change applied to him, since he had retired almost three years earlier. *Id*. ¶ 9. Plaintiff did not receive a substantive response to his question until April 2017, when Gould wrote Plaintiff to tell him that he was ineligible for the tuition benefit because he had not served 15 years in an eligible position. *Id*. ¶¶ 11–12. Plaintiff

6

appealed that decision in May 2017, and Defendant responded in July, affirming Gould's position and providing Plaintiff with a copy of the FRIP. *See id.* ¶¶ 14–15.

According to Plaintiff, his "primary consideration in evaluating Defendant's early retirement offer was providing for his son's college education." *Id.* ¶ 16. Plaintiff states that he would not have entered the early retirement agreement had he known he was ineligible for the tuition benefit. *Id.* ¶ 17.

Plaintiff sued Defendant in September 2017, alleging that Defendant violated its duty as a fiduciary of the FRIP by failing to give him accurate information about the plan. [1]. Plaintiff amended his complaint in January 2018 [26], and Defendant moved to dismiss [27].

As discussed above, this Court converted Defendant's motion into one for summary judgment in April 2018 [36], and granted the parties time to file additional responses and supplemental documents. This opinion addresses Defendant's motion for summary judgment on Plaintiff's complaint [27].

II. **Legal Standard**

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

7

In determining whether a genuine issue of material fact exists, this Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). The non-moving party has the burden of identifying the evidence creating an issue of fact, *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008), by citing "particular materials in the record," *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014). If there is "evidence on which the jury could reasonably find" for the non-moving party, then the motion must be denied. *Anderson*, 477 U.S. at 252. The moving party is entitled to summary judgment where the non-moving party fails to establish an "essential element" of the case for which that party has the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

## III. Analysis

### A. Statute of Limitations

Plaintiff's sole claim alleges that Defendant breached its duty to him as a fiduciary of the FRIP, in violation of ERISA. *See* [26] at 7. Plaintiff's complaint alleges both that Defendant gave him false or misleading information about FRIP benefits and that Defendant breached its fiduciary duty by failing to notify him of changes to the eligibility requirements for those benefits. *See id.* Defendant contends that insofar as Plaintiff's claim challenges the information provided to him before he entered the early retirement agreement in February 2011, that aspect of Plaintiff's claim is time-barred. [29] at 8. This Court agrees.

ERISA provides that no action for a breach of fiduciary duty may be brought "after the earlier of: (1) three years after the earliest date on which the plaintiff had

8

actual knowledge of the breach; or (2) six years after the date of the last action which constituted part of the breach, or in the case of an omission, the latest date on which the fiduciary could have cured the breach." *George v. Kraft Foods Global Inc.*, 814 F. Supp. 2d 832, 848 (N.D. Ill. 2011) (citing 29 U.S.C. § 1113). In cases of "fraud or concealment," however, plaintiffs may sue within six years of the date they discover the breach. *Id.* (quoting 29 U.S.C. § 1113).

Contrary to Plaintiff's assertion, his claim does not come within the fraud or concealment exception. Plaintiff has the burden of demonstrating that his claim merits that exception, and must show "some act on the part of the defendant designed to avoid detection." *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1093–94 (7th Cir. 1992); *see also George*, 814 F. Supp. 2d at 848–49. Such acts include: (1) overt acts of deception; and (2) "underlying ERISA violations that are self-concealing." *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir. 2013) (citing *Martin*, 966 F.2d at 1094). Even self-concealing acts, however, require some "misleading, deceptive, or otherwise contrived action or scheme" designed to "mask the existence of a cause of action" to qualify for the fraud exception. *Martin*, 966 F.2d at 1094. Concealment "by mere silence" does not warrant applying the exception. *Id.*

With respect to the information Defendant provided about the FRIP, Plaintiff claims that Defendant failed to give him sufficient details about the plan and his eligibility for benefits. *See* [26] at 7. Such omissions—without more—do not

9

demonstrate the kind of "affirmative acts" of concealment that trigger the fraud exception. *See George*, 814 F. Supp. 2d at 849 (citing *Martin*, 966 F.2d at 1094).[1]

Accordingly, this Court looks to the general limitations provision, and must determine which date falls earlier: (1) three years after plaintiff had "actual knowledge" of the breach; or (2) six years after the latest date on which Defendant "could have cured" the breach incurred by its omission. 29 U.S.C. § 1113. "Actual knowledge" generally refers to the point at which a plaintiff knows of "the essential facts of the transaction or conduct constituting the violation." *Martin*, 966 F.2d at 1086. Constructive knowledge does not suffice. *See id*.

Assuming that Defendant gave Plaintiff bad information about the FRIP before he agreed to take early retirement, the date Plaintiff had "actual knowledge" of that breach arrived no earlier than December 2016. Plaintiff says that he never saw the actual FRIP and relied upon the 2011 FAQs and his conversation with Gould in deciding to retire early. *See* [38-1] ¶¶ 5–7, 12–27. As such, he did not know that he lacked crucial details about eligibility for the tuition benefit before December 1, 2016, when he saw the revised 2012 FAQ. *Id*. ¶¶ 28–29. Although the 2011 FAQ told Plaintiff where to find additional information on the FRIP and the tuition benefit, that indicates constructive—not actual—knowledge of those details. Even though other circuits have indicated that requiring "actual knowledge" should

---

[1] Plaintiff's counsel stated in open court on July 17, 2018 that Defendant's alleged misrepresentations consisted of Gould's statement that everything Plaintiff needed to know was in the 2011 FAQ, and the short reference to the EAP's tuition benefits within the 2011 FRIP FAQ. In the interests of justice, this opinion specifically addresses and rejects these theories, as well as the additional theory (raised in Plaintiff's response brief) based upon Defendant's alleged failure to provide Plaintiff with a copy of the FRIP plan document, discussed further below.

10

not "excuse willful blindness," *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005), the record does not support a finding of willful blindness here, and the Seventh Circuit has not otherwise clearly accepted that standard, *see Martin*, 966 F.2d at 1086 n.7. Hewing to the "actual knowledge" standard and drawing inferences in Plaintiff's favor, Plaintiff only knew of any breach by omission as of December 2016, putting the three-year mark at December 2019.

As to when Defendant could have cured its breach by omission, that date falls no later than February 17, 2011—the date upon which Plaintiff's retirement agreement became irrevocable. *See* [38-4]. Since Plaintiff does not allege—and the record does not indicate—that Defendant ever modified the FRIP, the only exception permitting Plaintiff to revoke his agreement after that date does not apply. *See id.*; [26-4] at 6–7. Six years from that date is February 17, 2017.

Accordingly, "the earlier of" the two possible ERISA limitation periods is February 2017. *See* 29 U.S.C. § 1113. That provides the cut-off for Plaintiff's claim for any breach of fiduciary duty that Defendant committed by allegedly giving Plaintiff faulty information before he entered the early retirement agreement. Because Plaintiff filed this suit in September 2017, that aspect of his claim is time-barred.

### B. Breach of Fiduciary Duty

Even if no part of Plaintiff's claim fell outside of the statute of limitations, it would still fail because he fails to show that Defendant breached its fiduciary duty. Here, Plaintiff alleges his claim under two theories: (1) Defendant provided false or misleading information about the FRIP before he accepted early retirement; and (2)

11

Defendant breached its fiduciary duty by failing to notify him of changes in the eligibility requirements for plan benefits. *See* [26] ¶¶ 46, 51, 54; [37] at 8.

To prevail on either theory, Plaintiff must show: (1) that Defendant is a plan fiduciary; (2) that Defendant breached its fiduciary duties; and (3) the breach harmed Plaintiff. *See, e.g.*, *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). For purposes of this motion, Defendant concedes that it was an FRIP fiduciary, that it had to provide accurate information on the Plan, and that the FAQ constitutes a summary plan document. [29] at 11 n.5.

### 1. False or Misleading Information

Plaintiff claims that Defendant breached its fiduciary duty by intentionally providing him false or misleading information about early retirement benefits. [26] ¶¶ 46, 51. Defendant argues that it gave Plaintiff accurate information about his benefits, and that, in any case, Plaintiff fails to show that Defendant intentionally misled him, as required to prevail on his claim. [29] at 11, 13.

ERISA fiduciaries must "provide accurate information" to plan participants, and may not "mislead plan participants or misrepresent the terms or administration of a plan." *Tompkins v. Central Laborers' Pension Fund*, 712 F.3d 995, 1002–03 (7th Cir. 2013) (internal quotation marks omitted). But mere "negligence in fulfilling that duty is not actionable"; the fiduciary must have had the intent to "disadvantage or deceive" plan participants. *Id.* (quoting *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004)).

Here, Defendant clearly provided Plaintiff accurate information about the terms of the FRIP.[2] Accepting Plaintiff's version of events, Defendant gave him the 2011 FAQ, and Gould told him something "to the effect that all applicable information" was in the FAQ. [38] ¶¶ 1–2; [38-1] ¶ 14. Plaintiff searched for additional information on early retirement on Defendant's website and in his Faculty Handbook, but he did not email the Benefits Office to get a copy of the FRIP or otherwise reach out to any university official other than Gould. *See generally* [38]. Plaintiff does not identify any inaccurate information in the 2011 FAQ; instead, he contends that the FAQ's reference to the tuition benefit, Gould's statement, and/or Defendant's failure to directly give him a copy of the FRIP amount to a violation of Defendant's fiduciary duty, because they induced him to rely on the FAQ and to believe that the FRIP offered tuition benefits. *See* [37] at 8. Plaintiff does not, however, demonstrate any actionable misrepresentation.

True, Defendant did not directly provide Plaintiff with a copy of the FRIP. But, as Defendant notes, the 2011 FAQ expressly states that it only provides "general information" about the FRIP, and that the Plan itself can be obtained by emailing the Benefits Office. [38-2] at 12. The 2011 FAQ also lists the two incentives provided under the FRIP: waived health insurance premiums and a bonus. *Id*. at 5. Thus, the 2011 FAQ accurately summarized the FRIP benefits and directed readers to the full text of the FRIP for more precise information.

Even though the FAQ lacked detail explaining the various distinctions

---

[2] Plaintiff does not claim that Defendant breached any duty with respect to the EAP; indeed, Plaintiff does not mention the EAP in his complaint. *See generally* [26].

between the EAP and the FRIP, the FAQ itself did not contain any false or misleading information about the two plans. Indeed, the FAQ's "Tuition Benefits" section includes a link to information about the EAP, and the FAQ repeatedly encourages the reader to contact various university officials with any questions, provides contact information for those officials or departments, and offers *up to $3,000 for counseling services* to faculty members considering early retirement. *Id.* at 1. In short, the FAQ clearly disclosed its nature as a summary document, directed Plaintiff to further information and resources, including copies of the plans themselves (which Plaintiff did not review before retiring), and listed succinctly (and correctly) the general benefits available under the FRIP. *See generally id.* Because Defendant provided "accurate written information," it did not breach its fiduciary duty to Plaintiff. *See Vallone*, 375 F.3d at 642.

Similarly, Gould's statement that the 2011 FAQ contained "all applicable information" about the FRIP does not amount to inaccurate information, nor does it qualify as misleading. *See* [38] ¶ 5; *Tompkins*, 712 F.3d at 1002–03. Plaintiff does not claim that Gould told him that the 2011 FAQ provided all the terms of the FRIP, that the FRIP offered tuition benefits, or that she said anything at all contrary to the terms of the FRIP. Insofar as the 2011 FAQ gave Plaintiff all the information he needed to access the terms and conditions of both the FRIP and the EAP, Gould's statement was entirely accurate. Nor can it qualify as misleading when the 2011 FAQ expressly declares its nature as merely a summary document and directs the reader to other resources, including the governing plan document.

Gould may not have advised Plaintiff "of any document other than the FAQ," [38] ¶ 5, but the FAQ itself certainly did so, *see* [26-1] at 2, 12. Thus, both Gould and the FAQ pointed Plaintiff to the relevant plan documents and resources to guide him in his decision.

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff's allegations concern the FRIP, not the EAP, so his complaint fails to set forth a breach of any fiduciary duty by Defendant's failure to sufficiently inform him about the exact terms of the EAP—an entirely separate plan. Moreover, as discussed below, the EAP permits Defendant to amend or eliminate EAP benefits in its "sole discretion." *See* [29-1] at 21. Thus, Plaintiff cannot claim that Defendant breached any duty by exercising its authorized discretion under the plan, nor can he claim that he reasonably relied upon such benefits where the EAP itself expressly permits Defendant to revoke the benefits on a totally discretionary basis. *See, e.g.*, *Magin v. Monsanto Co.*, 420 F.3d 679, 688 (7th Cir. 2005) (affirming summary judgment for employer that acted within its authorized discretion in declining to offer the plaintiff a benefit).

Plaintiff's citations to authority fare no better, because the precedents he cites, unlike here, involve plan fiduciaries that actively provided "inaccurate and misleading information." *See, e.g., Bowerman v. Wal-Mart Stores*, 226 F.3d 574, 591 (7th Cir. 2000). In *Bowerman*, the plan materials—including the plan summary *and* the governing plan document—provided inadequate information, and the plan's representatives compounded that failure by providing inaccurate information in

15

response to the plaintiff's inquiries. *See id.* Nothing of the sort occurred here. At most, the 2011 FAQ—and Gould—failed to affirmatively explain the details of exactly how the FRIP and the EAP plans interacted. Neither the FAQ nor Gould, however, provided misleading or inaccurate information in response to a direct inquiry, or prevented Plaintiff from learning additional information about either plan. *See Chojnacki v. Ga.-Pac. Corp.*, 108 F.3d 810, 817 (7th Cir. 1997). Indeed, referring a plaintiff to the actual terms of the plan is "not misleading." *Id.* That is precisely what Defendant did here.

The record also undermines any argument that Plaintiff reasonably relied on the 2011 FAQ alone, because reasonable reliance would have required him to actually confirm that his initial reading of the FAQ was the correct interpretation under the plans themselves. *See Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 280 (7th Cir. 1994). Believing that the FRIP accorded his child free tuition, when Plaintiff never consulted the FRIP, and the FAQ did not list tuition as one of the FRIP's incentives, was not reasonable reliance, particularly in light of the FAQ's numerous disclaimers and cross-references to additional resources. *See id.*[3] The 2011 FAQ was all of 14 pages, including its explanatory appendix. Any claim that Defendant was hiding the ball simply cannot be sustained. Similarly, this Court rejects the notion that requiring Plaintiff to email the Benefits Office to obtain a copy of the FRIP constitutes a failure by the Defendants to provide the FRIP to

---

[3] Conceivably, if such disclaimers had been buried in footnotes hidden in an extensive, technical document, then the result might be different, but such is not the case here. *Cf. Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 476 (7th Cir. 2010) (discussing a layperson's likely understanding of the complicated insurance plan documents).

Plaintiff. The fact that Plaintiff simply looked for the plan in the wrong places—contrary to the FAQ's direction—and then looked no further, cannot be attributed to Defendant.

Finally, Plaintiff offers no evidence that Defendant intended to "disadvantage or deceive" him when it provided him with this summary information, which disposes of his claim. *Tompkins*, 712 F.3d at 1003. Merely omitting some specific warning or certain details in a summary document does not, on its own, establish any intent to deceive. *See id.*; *Vallone*, 375 F.3d at 642. Plaintiff fails to show that any fault on Defendant's part amounted to anything more than mere negligence, which cannot support a cause of action for breaching a fiduciary duty. *Tompkins*, 712 F.3d at 1003. Accordingly, Defendant merits summary judgment with respect to any breach arising from the information it provided Plaintiff on the FRIP.

### 2. Failure to Notify Plaintiff of Changes

Plaintiff's theory that Defendant breached its fiduciary duty by failing to notify him of changes to the FAQ also fails. ERISA requires fiduciaries to fulfill their duties "in accordance with the documents and instruments governing the plan." *Id.* (quoting 29 U.S.C. § 1104(a)(1)(D)). Here, the FRIP only required Defendant to notify participants of any material changes *to the FRIP*. [26-4] at 6–7. Plaintiff identifies no change or amendment to the FRIP at any time relevant to his claim, and thus fails to show that Defendant breached its duty. The plain terms of the FRIP make clear that changes to the FAQ are not covered by the FRIP's notice requirement. *See* [38-2] at 12. Nor does Plaintiff identify any obligation that

17

Defendant had to notify him of changes to the EAP—which, in any event, constitutes a separate plan from the one upon which Plaintiff bases his suit.

Additionally, even if Defendant breached some duty by failing to update Plaintiff on the content of the FAQ, or the terms of the EAP, that failure did not legally harm Plaintiff, so Plaintiff's claim still fails. *See Brosted*, 421 F.3d at 465. Plaintiff's agreement to retire became irrevocable on February 17, 2011. *See* [38-4]. By the time Defendant modified the EAP in May 2012 (with a July 2011 effective date), Plaintiff could not withdraw his acceptance of early retirement absent a material change to the FRIP—a precondition that never occurred. *See id.*; [26-4] at 6–7; [29-2] at 2. So the harm that Plaintiff complains of—choosing to retire earlier, instead of teaching for another five years to remain eligible for the tuition benefit—was in no sense caused by a change to the EAP *a year after Plaintiff made his decision*. Moreover, Defendant retained the authority to amend or eliminate EAP benefits in its "sole discretion," and thus acted within its rights under that plan by amending the qualifications for the tuition benefit. *See* [29-1] at 21. Thus, Plaintiff has no remedy under the EAP, nor can he be said to have been unlawfully harmed by Defendant's authorized administration of that plan. Defendant therefore merits summary judgment on this aspect of Plaintiff's claim as well. *See, e.g., Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471–72 (7th Cir. 1997).

18

## IV. Conclusion

For the reasons discussed above, this Court grants Defendant's motion for summary judgment on Plaintiff's complaint [27]. Judgment is entered in favor of Defendant and against Plaintiff. Civil case terminated.

Dated: July 19, 2018

            Entered:

            _____
            John Robert Blakey
            United States District Judge